UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIM. ACTION NO. 3:24-00190-01 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| CHRISTOPHER C. SMITH (01) | MAG. JUDGE KAYLA D. MCCLUSKY |

### REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to suppress [doc. # 27] filed by Defendant Christopher Smith. For reasons stated below, IT IS RECOMMENDED that the motion be DENIED.

### Background

On February 6, 2023,[1] following a multi-year investigation of Christopher C. Smith ("Smith") that included several drug buys, Louisiana State Police Trooper First Class Jonathan Chapman ("Chapman" or "TFC Chapman"), applied for, obtained, and executed a state court search warrant for the dwelling located at 502 Folse Avenue, Bastrop Louisiana. *See* Search Warrant and Search Warrant Application; M/Suppress, Exh. A [doc. # 27-3]. In the residence's living room and in a storage shed on the property, agents discovered significant quantities of oxycodone pills, methamphetamine, marijuana, Xanax, U.S. currency, plus a cache of firearms. *See* Gov.'t Opp. Brief, pg. 4. According to Smith, agents arrested him on February 14, 2023.[2] (Def. M/Suppress, pg. 1).

---

[1] This date is set forth in the Government's brief. (Gov.'t Opp., pg. 4 [doc. 30]). However, the handwritten date on the application and warrant is not entirely clear and could be read as the 8th of February. *See* Search Warrant and Search Warrant Application; M/Suppress, Exh. A [doc. # 27-3].

[2] Although Smith's brief lists his arrest date as February 14, 2024, that is a typographical error.

On September 4, 2024, a federal grand jury returned a three-count indictment against Smith, charging him with possession with intent to distribute methamphetamine, possession of eight firearms in furtherance of drug trafficking, and felon in possession of a firearm(s), in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii), 18 U.S.C. § 924(c)(1), and 18 U.S.C. § 922(g)(1), respectively. The indictment also included forfeiture allegations. Smith was arraigned on October 7, 2024, and entered a plea of not guilty as to each count. (Minutes [doc. # 16]).

On December 10, 2024, Smith filed the instant motion to suppress all evidence and statements obtained pursuant to the February 6, 2023 search of the property at 502 Folse Avenue, Bastrop, Louisiana, because it was premised upon an invalid search warrant. Specifically, Smith contends that the warrant application was so lacking in requisite facts linking the residence to criminal activity that no reasonable officer could have relied on the warrant.

On January 6, 2025, the Government filed its response in opposition to the motion to suppress. (Gov.'t Opp. [doc. # 30]). It maintains that the "good-faith" exception protects the officers' reliance on the search warrant, and, in any event, the supporting affidavit provided probable cause to support the issuance of the warrant. *Id*.

The parties agreed to submit the matter for decision on the briefs. Toward that end, they filed reply and sur-reply memoranda on January 21 and 28, 2025, respectively. [doc. #s 32-33]. Both sides submitted a copy of the search warrant and application. *See* doc. #s 27-3 and 30-1. The Government also attached a Google map image that depicted 502 Folse Avenue in relation to Welch Avenue. [doc. # 30-2]. Briefing is complete; the matter is ripe.

---

*See* [doc. #20 (In a Motion to Dismiss, Smith identifies his arrest date as February 14, 2023.)]; *see also* [doc. #1 (Indictment)].

## The Warrant Application

TFC Jonathan Chapman of the Louisiana State Police Criminal Investigations Division, Monroe Field Office ("LSP-MFO") drafted the five and one-half-page, single-spaced warrant application at issue. (Search Warrant and Search Warrant Application; M/Suppress, Exh. A [doc. # 27-3]). He explained therein that, on March 24, 2021, the LSP-MFO initiated an almost two-years-long investigation of Smith regarding his distribution of illegal narcotics in Morehouse Parish. During this period, agents utilized a CI(s) to conduct six controlled buys of narcotics from Smith, which the Court briefly summarizes, in pertinent part, as follows:

1) On **March 26, 2021**, agents used a CI to purchase 28.5 grams of methamphetamine from Smith for $400. Agents drove the CI to Smith's alleged residence at 1210 Texas Avenue, Bastrop, Louisiana, where they observed a parked Toyota Camry registered to Linda Hawkins. Smith ultimately changed the meet location for the transaction to Welch Avenue. Officers observed the same Toyota Camry on Welch Avenue.

2) On **August 9, 2021**, agents utilized two CIs to purchase 29 grams of methamphetamine from Smith for $270. Smith was driving a black Chevrolet truck that also was registered to Linda Hawkins. The transaction was conducted at an unknown residence in the 1100 Block of Summerlin Lane, Bastrop, Louisiana.

3) On **October 14, 2021**, Smith sold 26 grams of methamphetamine to a pair of CIs for $270. Smith told the CIs to call him when they were close to his residence at 1210 Texas Avenue, Bastrop, Louisiana. When the CIs called Smith, he gave them numerous locations for the buy, but eventually told the CI to go to a red house on Welch Avenue, which the CI identified as 517 Welch Avenue, Bastrop, Louisiana. The CI exited the vehicle and walked to the backyard of the residence where the CI observed Smith in the yard of a trailer to the west of the residence. The CI conducted the drug purchase through a metal cyclone fence. Through investigative means, TFC Chapman was able to determine that the address of the trailer where Smith had been standing was **502 Folse Avenue, Bastrop, Louisiana**.

4) On **January 3, 2022**, agents enlisted two CIs to purchase 29.7 grams of methamphetamine from Smith for $350. Smith told the CIs to come to "the residence on Texas Avenue," which, from previous buys, the CIs knew to be 1210 Texas Avenue, Bastrop, Louisiana. Once the CIs were near the residence, they contacted Smith, who told them that the drugs were located in the center console of a truck parked in the driveway beneath a carport. A CI retrieved the drugs and left the funds in the truck.

5) On **July 19, 2022**, agents employed two CIs to purchase fifteen oxycodone pills for $450 from Smith, who completed the deal with the CIs on Welch Avenue from a silver Toyota Camry registered to Linda Hawkins.

6) On **January 31, 2023**, TFC Seymour and Sgt. Jones went to the area of **502 Folse,** Bastrop, Louisiana and observed a GMC vehicle registered to Smith and a gray Cadillac registered to Shonta Pearson and Antonio Smith, both parked at the residence. That same day, officers used the services of two CIs to purchase 28.8 grams of methamphetamine from Smith for $300. Smith instructed the CIs to proceed to the same red brick house on Welch Avenue that he directed them to for the third buy. Agents observed Smith drive to **502 Folse** in the same black Silverado registered to Linda Hawkins that he had used in the second buy. Smith then instructed the CIs to pull down to a green house on Welch Avenue. A CI observed Smith walking from the white trailer on **Folse** to Welch Avenue. Smith then completed the transaction.

In the wake of his arrest, agents *Mirandized* Smith, whereupon he admitted that he sold illegal drugs as his sole source of income. (Gov.'t Opp. Brief, pgs. 4-5). He explained that he would borrow a car from a friend and drive to Dallas, then fly to California to meet his drug supplier. *Id*. Smith acknowledged that he was a convicted felon and could not own firearms. *Id*.

## Law

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . ." U.S. CONST. AMEND. IV.[3] "The question that a federal court must ask when evidence secured by state officials is to be used as evidence against a defendant accused of a federal offense is whether the actions of the state officials in securing the evidence violated the Fourth Amendment to the United States Constitution." *United States v. Cordero*, 465 F.3d 626, 630 (5th Cir. 2006).

"The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment

---

[3] The protections of the Fourth Amendment extend to the states through the Fourteenth Amendment. *Dunaway v. New York*, 442 U.S. 200, 207 (1979) (citation omitted).

rights." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (citations omitted). Evidence obtained in violation of the Fourth Amendment is generally excluded and "cannot be used in a criminal proceeding against the victim of the illegal search or seizure." *United States v. Wallace*, 885 F.3d 806, 810 (5th Cir. 2018) (quoting *United States v. Calandra*, 414 U.S. 338, 347 (1974)).  The purpose of this exclusionary rule is to deter unlawful police conduct.  By refusing to admit evidence gained as a result of conduct that deprives the defendant of some right, "the courts hope to instill in those particular investigating officers, or in their future counterparts, a greater degree of care toward the rights of the accused." *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 919 (1984)). However, the exclusionary rule is not without limits, and suppression of evidence should be "ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.*

The exclusionary rule also requires the suppression of evidence that is seized pursuant to a warrant unsupported by probable cause. *United States v. Pope*, 467 F.3d 912, 916 (5th Cir. 2006) (citation omitted).  A motion to suppress evidence discovered pursuant to a search warrant is analyzed under a two-step process. *United States v. Sibley*, 448 F.3d 754, 757-758 (5th Cir. 2006) (citation omitted).  First, the court must decide whether the good-faith exception to the exclusionary rule applies. *Id*.  "The good-faith exception provides that where probable cause for a search warrant is founded on incorrect information, but the officer's reliance upon the information's truth was objectively reasonable, the evidence obtained from the search will not be excluded." *Id*.  (quoting *United States v. Cavazos*, 288 F.3d 706, 709 (5th Cir.2002)) (internal quotation marks omitted).  Because the exclusionary rule is designed to deter misconduct rather than to punish the errors of judges and magistrates, "[e]vidence obtained during the execution of

5

a subsequently invalidated search warrant is *not* excluded *if* the officer executing the warrant relied on it in good faith." *United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (citation omitted). If this good-faith exception applies, then the inquiry ends. *Id*.

When an officer obtains evidence in an "objectively reasonable good-faith reliance" on a search warrant, the exclusionary rule's "deterrence rationale loses much of its force," and the evidence is admissible. *Pope*, 467 F.3d at 916. As the Fifth Circuit explained,

> [t]his is in part because an issuing-judge's probable cause determination, based on an underlying affidavit, is afforded great deference. Of course, such deference is not boundless, but, where the officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way. Thus, when an officer acting with objective good faith has obtained a search warrant from a judge . . . and acted within its scope, the officer cannot be expected to question the magistrate's probable cause determination . . .

*Gibbs*, 421 F.3d at 357–58 (internal citations and quotation marks omitted).

In short, "[f]or the good-faith exception to apply, the executing-officer's reliance on the issuing-judge's probable-cause determination and the technical sufficiency of the warrant must have been objectively reasonable." *Gibbs*, 421 F.3d at 358 (citation omitted). The good-faith inquiry "'is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" *United States v. Maggitt*, 778 F.2d 1029, 1035 (5th Cir. 1985) (quoting *United States v. Leon*, 468 U.S. 897, n.23 (1984)). Stated another way, "if it is plainly evident that a magistrate or judge had no business issuing a warrant, then police cannot objectively rely on the warrant." *Id*. (quoted source and internal quotation marks omitted).

Importantly, the good-faith exception asks "not whether the issuing judge made a proper determination of probable cause, but whether the agents reasonably relied on the judge's determination in light of the information set forth in the affidavit." *United States v. Pigrum*, 922

6

F.2d 249, 252-253 (5th Cir. 1991) (citations omitted). Ultimately, a reviewing court will defer to an issuing judge's probable cause determination in signing a warrant unless:

(1) the issuing-judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;

(2) the issuing-judge wholly abandoned his judicial role in such a manner that no reasonably well trained officer should rely on the warrant;

(3) the underlying affidavit is "bare bones" (so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable); or

(4) the warrant is so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.

*Gibbs,* 421 F.3d at 358 (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)) (internal quotation marks omitted).

The government bears the burden of demonstrating that the good-faith exception is applicable. *United States v. Gant*, 759 F.2d 484, 487-488 (5th Cir. 1985). The parties agree that a hearing in this matter is not necessary. Indeed, "[e]videntiary hearings are not granted as a matter of course, but are held only when the defendant alleges sufficient facts which, if proven, would justify relief." *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983) (citation omitted). Because an affidavit submitted in support of a search warrant is presumptively valid . . .

> [t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

7

*Franks v. Delaware*, 438 U.S. 154 (1978).

Smith contends that the good-faith exception is inapplicable on the lone basis that the warrant was grounded upon an affidavit that was so lacking in probable cause as to render an officer's belief in its existence entirely unreasonable, i.e., it was bare bones. (Def. Reply Brief, pg. 2). Under these circumstances, an evidentiary hearing is not required. *See United States v. Moore*, 39 F.3d 320 (5th Cir. 1994) (where defendant did not argue that affiant's statements were deliberately false or made with reckless disregard for the truth, then court did not abuse discretion in declining to hold an evidentiary hearing). Instead, determination of good faith will depend upon an examination of the affidavit by the reviewing court. *Gant*, 759 F.2d at 487-489.[4]

## Analysis

Smith asserts that he lived at 1210 Texas Avenue, Bastrop, Louisiana, and that the warrant application made no mention of him staying, using, renting or owning 502 Folse Avenue to reside at, hang out, or to stash drugs.[5] He maintains that the only incident that connected him to 502 Folse Avenue was that he was in the area behind the house on one occasion. He observes that there is no indication that he was seen entering the house or selling drugs out of the house. Therefore, he concludes that the search warrant affidavit did not even rise to the level of "bare bones," and so lacked the indicia of probable cause that the officers could not reasonably rely upon it.

---

[4] The court's first step is to examine the affidavit. *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988).

[5] Of course, Smith is walking a fine line because, if he did not reside or at least stay overnight at 502 Folse Avenue, then he lacks standing to challenge the search of the property. *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).

"Bare bones affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Morton*, 46 F.4th 331, 336 (5th Cir. 2022) (citation and internal quotation marks omitted). An affidavit is bare bones when it contains "'wholly conclusory statements' such as 'the affiant 'has cause to suspect and does believe' or '[has] received reliable information from a credible person and [does] believe.'" *Id*. (citation and some internal quotation marks omitted). "Whether an affidavit is a bare bones affidavit is determined by a totality of the circumstances." *United States v. Robinson*, 741 F.3d 588, 597 (5th Cir. 2014) (citation omitted).

Upon review, the affidavit in this case is far from conclusory. As stated earlier, it is over five pages in length and details facts depicting multiple drug buys over a two-year period. *Morton*, 46 F.4th at 337 (three-page affidavits that detail facts surrounding arrest and discovery of drugs have "some meat on the bones").

Furthermore, contrary to Smith's argument, the affidavit does not fail to link 502 Folse with the drug buys. An affidavit must "'establish a nexus between the house to be searched and the evidence sought.'" *United States v. Nguyen*, 172 Fed. App'x. 558 (5th Cir. 2006) (quoting *United States v. Broussard*, 80 F.3d 1025, 1034 (5th Cir.1996)). "The nexus may be established 'by direct observation or through normal inferences as to where the articles sought would be located.'" *Id*.

Here, the search warrant affidavit indicated that four of the six transactions occurred on Welch Avenue, which one may infer was behind or adjacent to Folse Avenue by the description of two of the transactions. For example, one of the transactions occurred through a fence between backyards of a house on Welch and the trailer at 502 Folse Avenue. Moreover, for the final drug deal that was conducted just one week before agents sought the search warrant, agents

9

observed Smith drive to 502 Folse Avenue immediately prior to the drug deal which was completed on the adjacent Welch Avenue. The CI observed Smith walk over from the white trailer on Folse Avenue. In addition, agents had spotted a car registered to Smith parked at 502 Folse Avenue earlier that day. The fact that Smith left his personal car at 502 Folse Avenue, while he drove around town arranging drug deals in a different vehicle, implies that he had a connection to the residence at 502 Folse Avenue.

To be sure, the application referred to 1210 Texas Avenue as Smith's "residence" and does not explain why 502 Folse Avenue was a more likely repository for the contraband than the former address. If the affidavit had included a statement such as, "in the agent's experience, drug dealers often give purchasers the impression that they live at one residence, but stash contraband at another place near the spot where they consummate the transactions," then there would have been probable cause to establish 502 Folse Avenue's nexus with Smith's drug trafficking. *See, e.g.*, *United States v. Collins*, Crim. No. 06-30003-01, 2006 WL 3396504, at *8 (W.D. La. Oct. 6, 2006), *R&R adopted,* 2006 WL 8439602 (W.D. La. Nov. 22, 2006) (CI placed defendant at the subject residence two hours after the second controlled buy; defendant had identified the address as his residence while in custody; and the affiant stated that, in his experience, drug dealers commonly maintained tools of the trade, ledgers, and guns at their residences).

However, arguments that an application did not sufficiently link the place to be searched with drug-related crimes, or an affiant's failure to invoke his "training and experience" with drug dealers, represent omissions "more germane to attacking 'the probable-cause determination itself' than to showing the applicability of the bare-bones cutout." *United States v. Devaney*, 109 F.4th 322, 326 (5th Cir. 2024); *cf. United States v. Dejoie*, Crim. No. 22-00050, 2024 WL

10

1507745, at *4 (M.D. La. Apr. 8, 2024) (good-faith exception did not apply where the affidavit did not sufficiently establish that defendant resided at the target address and no generalized inferences based on agent's experience that would connect the address to the drug dealing activities observed elsewhere). Here, the Court's focus is on the agent's good-faith reliance on a search warrant that was reviewed, approved, and signed by an impartial judge.

This case shares more than a passing similarity to *United States v. Thomas*, where this Court found that the good-faith exception applied to a search warrant affidavit that omitted any allegation that the observed drug trafficker(s) resided at the target residence, but included an allegation that known drug dealers had used the residence many times during the past year and that agents had followed a participant in an illicit drug sale to the subject premises after the drug transaction. *United States v. Thomas*, Crim. No. 08-0266-010304, 2009 WL 774852, at *5 (W.D. La. Mar. 24, 2009).

In this case, agents did not allege that Smith resided at 502 Folse Avenue, but they documented four transactions that occurred near the residence, with one occurring through the fence in the back yard of the residence, and another where the CI observed Smith coming from the target residence. Moreover, Smith kept his vehicle at 502 Folse Avenue and agents followed him there immediately prior to the last drug transaction. *See United States v. Chew*, 1 F.3d 1238 (5th Cir. 1993) ("Where the suspect's home is in reasonable proximity to the point of sale, the police reasonably may infer that evidence is likely to be found in his home").

In *United States v. Gallegos*, a detective had received information from a CI that a man named "Roland" was selling drugs in the front yard of a house where the Gallegos family lived and parked their cars. *United States v. Gallegos*, 239 Fed. App'x. 890, 892 (5th Cir. 2007). Accordingly, the detective prepared a search warrant affidavit for the house that described a

11

Hispanic male, named Roland, who "controlled" the target residence and, per a CI, had possessed cocaine there in the past 48 hours. *Id*. The agent neglected to mention that the Gallegos family lived there and stated that drugs were dealt "at" the residence instead of outside it. *Id*. Nonetheless, the Fifth Circuit found a sufficient nexus between the narcotics and residence because the affidavit stated that Roland possessed drugs at the residence. *Id*.

Here, Smith possessed drugs in the backyard of 502 Folse Avenue from where he conducted one drug transaction. He also drove to the residence and then walked from there to an adjacent street to conduct another transaction. Finally, his personal vehicle was observed parked there.

The ultimate question presented by the good-faith exception is "whether the magistrate so obviously erred that any reasonable officer would have recognized the error." *Messerschmidt v. Millender*, 565 U.S. 535, 556 (2012). This Court is unable to conclude that any reasonable officer would have recognized the error. Furthermore, there is no suggestion that the officers and judge conspired together to issue a deficient warrant. Consequently, "even if the warrant in this case were invalid, it was not so obviously lacking in probable cause that the officers can be considered 'plainly incompetent' for concluding otherwise." *Messerschmidt*, 565 U.S. at 556. Accordingly, the good-faith exception applies, and the second step of the suppression analysis is pretermitted. *United States v. Nguyen*, 172 Fed. App'x. 558, 561 (5th Cir. 2006); *Devaney*, 109 F.4th at 326 (the court proceeds to the second step, i.e., the probable cause determination, only if the good-faith exception is inapplicable).

Apart from seeking suppression of all evidence and statements that are the product of the purportedly invalid search warrant, Smith's motion does not otherwise address the suppression of any incriminating statements. In addition, Smith does not contend that any of his statements,

all of which allegedly were uttered post-*Miranda,* were not freely and voluntarily made. Having found that the search warrant is subject to the good-faith exception, and in the absence of any apparent *Miranda* or constitutional violations, the Court necessarily concludes that there is no basis to suppress any of Smith's statements. *United States v. Needham*, Cr. No. 11-185, 2011 WL 13124280, at *8 (W.D. La. Oct. 26, 2011), *aff'd,* 546 Fed. App'x. 353 (5th Cir. 2013); *see also United States v. Pace*, 955 F.2d 270, 278 n.9 (5th Cir. 1992) (denial of the motion to suppress evidence seized at defendant's barn also disposes of his argument that the statements he made after the search of the barn and his arrest were inadmissible at trial).

## Conclusion

For the above-stated reasons,

IT IS RECOMMENDED that the motion to suppress [doc. # 27] filed by Defendant Christopher Smith be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 5th day of February, 2025.

*[signature: Kayla Dye McClusky]*

K<small>AYLA</small> D<small>YE</small> M<small>C</small>C<small>LUSKY</small>
U<small>NITED</small> S<small>TATES</small> M<small>AGISTRATE</small> J<small>UDGE</small>